534 A.2d 1015

**Rodney CARTER**

v.

**STATE of Maryland.**

**Post Conviction.**

**No. 23, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Jan. 6, 1988.

438

Charles A. Fineblum, Asst. Public Defender, Baltimore, for applicant.

Nothing submitted by appellee.

Submitted before GARRITY, BLOOM and KARWACKI, JJ.

BLOOM, Judge.

On February 28, 1985, Rodney Carter, the applicant, was convicted by a jury in the Circuit Court for Baltimore City (Johnson, J.) of use of a handgun in a crime of violence and of two counts of assault. He was sentenced to a term of twenty years for the handgun conviction and to two concurrent fifteen year terms on the assault charges.

Applicant appealed his convictions, and we affirmed in an unreported opinion, *Carter v. State*, No. 1028; September

Term, 1985, filed March 20, 1986, *cert. denied,* 306 Md. 513, 510 A.2d 259 (1986).

On September 10, 1986, applicant filed a petition for post conviction relief. Two months later, on November 19, 1986, applicant filed a supplemental petition. A hearing on these petitions was held before Chief Judge Robert Hammerman on April 6, 1987. At that hearing, applicant argued that he had been denied effective assistance of appellate counsel. The facts supporting this claim are as follows.

Applicant and his co-defendant, Gene Matthews, were tried together at a joint trial. We reversed the co-defendant's conviction because we determined that the trial judge erred in prohibiting defense counsel from asking a key prosecution witness "how much" intoxicants—alcohol and cocaine—he had consumed just prior to the incident. *Matthews v. State,* 68 Md.App. 282, 511 A.2d 548, *cert. denied,* 308 Md. 238, 517 A.2d 1121 (1986). In issuing our ruling, we stated that the Maryland authority for permitting a party to impeach a witness by asking whether the witness was intoxicated at the time of the incident was *Dove v. State,* 33 Md.App. 601, 365 A.2d 1009 (1976), *rev'd on other grounds,* 280 Md. 730, 371 A.2d 1104 (1977). We also noted that *Dove* did not specifically authorize a party to inquire as to the *extent* of intoxication. In determining that it was error to preclude defendant Matthews from impeaching the prosecuting witness, Earl Frazier, by cross-examining him regarding the extent of his intoxication, we relied upon foreign authorities and what we considered to be a logical extension of the *Dove* holding. *Matthews,* 68 Md.App. at 290–91, 511 A.2d 548.

Unfortunately for applicant, his appellate counsel did not raise the issue of improper restriction of cross-examination, as counsel for the co-defendant had done successfully. Applicant's post conviction argument is that his appellate counsel should be deemed ineffective for her failure to have raised that issue.

When a post conviction court is asked to review an attorney's performance to determine whether that performance amounted to a deficient act, the reviewing court must be "highly deferential" to counsel. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). The Supreme Court has said we must evaluate counsel's action "from counsel's perspective at the time." *Id.* As Judge Moylan recently reminded us in *State v. Dowdell,* 73 Md.App. 172, 533 A.2d 695 (1987); this attitudinal approach to claims of ineffective assistance of counsel has been fully endorsed by the Maryland Court of Appeals in *State v. Tichnell,* 306 Md. 428, 441, 509 A.2d 1179, *cert. denied,* —— U.S. ——, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986) and *Harris v. State,* 303 Md. 685, 698 n. 7, 496 A.2d 1074 (1985). *Dowdell,* 73 Md.App. at 176, 177, 533 A.2d 695. *Strickland* states that a reversal on the grounds of ineffective assistance of counsel is not appropriate unless the defense has carried the burden of showing both (1) a deficient performance of counsel and (2) prejudice to the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. *See also, Tichnell,* 306 Md. at 441, 509 A.2d 1179; *Harris,* 303 Md. at 695–701, 496 A.2d 1074. "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. *See also, State v. Tichnell,* 306 Md. at 441–43, 509 A.2d 1179. Neither perfection nor freedom from error is demanded. We are concerned with whether counsel was "a reasonably competent attorney" whose advice was "within the range of competence demanded of attorneys in criminal cases." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065.

Since failing to raise a particular appellate argument does not constitute ineffective assistance if counsel had a reasonable basis for believing the argument would fail, we must consider whether applicant's counsel had a reasonable basis to believe that she would not be likely to succeed on an

argument that the trial court erred in restricting cross-examination of Frazier as to how much alcohol and drugs he had consumed. We find that she did have a reasonable basis for that belief.

First, it was not unreasonable for counsel to have believed that the issue had not been preserved for appellate review. The record shows that only counsel for applicant's co-defendant asked the "how much" question. After Frazier had testified on direct examination, cross-examination was begun by counsel for applicant's co-defendant, Matthews. An objection to his "how much" question was sustained, the trial judge making it clear that he did not regard such questions as proper cross-examination for purpose of impeachment. Applicant's trial counsel did not repeat the "how much" question when it was his turn to cross-examine. At the post conviction hearing, applicant's appellate counsel told the hearing judge that in her opinion the restricted impeachment issue had not been preserved for applicant's appeal because applicant's trial counsel had neither asked the "how much" question nor voiced an objection to the ruling on co-counsel's question.

That opinion may not have been legally correct. There is a body of law which suggests that applicant's trial counsel did not have to join in the objection to preserve the issue for appeal. The Code of Professional Responsibility at DR 7-106 provides that: [1]

---

1. On April 15, 1986, the Court of Appeals adopted the Maryland Rules of Professional Conduct. The Maryland Rules of Professional Conduct became effective January 1, 1987. 13 Md.Reg. 11 (Part II at 3) (May 23, 1986). *See also,* Court Rules, 306 Md. LVI (1986). The court's order states:

   that the Code of Professional Responsibility ... shall continue in full force and effect and shall govern the conduct of attorneys until January 1, 1987; and attorneys shall continue on and after January 1, 1987, to be subject to discipline for violations of the Code of Professional Responsibility occurring prior to January 1, 1987....

   Since applicant's trial and appeal occurred prior to January 1, 1987, the former Code of Professional Responsibility is applicable *sub judice.* We note, however, that former DR 7-106(A) is now found at

(A) A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling.

.    .    .    .    .

(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

.    .    .    .    .

(6) Engage in undignified or discourteous conduct which is degrading to a tribunal.

Charles W. Wolfram, in discussing this subject in his text, *Modern Legal Ethics*, West Publishing (1986), at page 625, observes:

The professional rules largely track the law of contempt in this area. Provisions of the Code, however, appear to go beyond contempt law, particularly with respect to conduct that is insulting to a tribunal but not otherwise disruptive. A lawyer is prohibited by DR 7–106(A) from disregarding, or advising a client to disregard, a rule or ruling of a tribunal except in the case of a good-faith and appropriate proceeding to challenge the rule or ruling. And DR 7–106(C)(6) provides that a lawyer shall not engage in "undignified or discourteous conduct which is degrading to a tribunal." The Model Rules are more cryptic. The only relevant rule, MR 3.4(c), prohibits a lawyer from disobeying an obligation under the rules of a tribunal except for an "open refusal based on an assertion that no valid obligation exists." (Footnote omitted.)

Based on the above, a good argument could be made that it would have been a violation of the Code of Professional Responsibility as well as contemptuous for applicant's trial attorney to have asked the same question which the trial

Rule 3.4(c), and that former DR 7–106(C)(6) is now found at Rule 3.5(a)(8).

judge had already ruled should not be asked. *See, Sacher v. United States,* 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952); *Commonwealth of Pennsylvania v. Local Union 542, International Union of Operating Engineers,* 552 F.2d 498 (3rd Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977); *In re: Dellinger,* 461 F.2d 389 (7th Cir.1972) (contemptuous to proceed or cease a line of argument despite judge's order). *See also, Sandstrom v. State,* 402 So.2d 461 (Fla.App.1981), *review denied,* 412 So.2d 470 (Fla.1982), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985) (an order to cease examining a witness or not to continue a line of questioning must be obeyed). What else, then, might applicant's trial counsel have done to "preserve the issue"? The court's ruling was complete and final when the question was asked and the State's objection to it was sustained. Applicant's counsel certainly should not have been required to take a formal exception to the ruling, since such exceptions are not longer necessary. Md. Rule 4–322(d). The evidentiary issue had been raised and decided. Md. Rule 1085. For applicant's trial counsel to have asked the same question just to get the same ruling would have been an empty, futile gesture, which the law does not require just to preserve an evidentiary issue for appeal. *See Standifur v. State,* 64 Md.App. 570, 580, 497 A.2d 1164 (1985), *aff'd,* 310 Md. 3, 526 A.2d 955 (1987).

Consequently, had the issue of undue restriction on impeachment of Frazier been raised in applicant's appeal, this Court might well have deemed that issue to have been preserved by the trial court's ruling on the question asked by counsel for the co-defendant. In any event, neither the Court of Appeals nor this Court has ever ruled that the law absolutely requires counsel for one co-defendant to repeat a question asked by counsel for another co-defendant, to which the court had sustained an objection, in order to preserve the ruling for appellate review.

We need not decide that issue in this case, however. The question before us is not whether appellate counsel's conclusion that she could not raise the Frazier impeachment

issue on appeal was legally correct, but whether competent counsel could reasonably have reached the same conclusion.

Applicant's trial was held during February 1985. The transcript of the trial was not prepared until October 1985, so appellate counsel could not have read the transcript until then. One year earlier, on October 25, 1984, the Court of Appeals had filed its opinion in *Osburn v. State*, 301 Md. 250, 482 A.2d 905 (1984), involving a joint trial of two defendants. In resolving one of the appellate arguments, the Court said:

> Osburn also contends that the state erred in arguing to the jury during closing argument that the twenty-three state witnesses, identified as clients of the law firm, were a random sample of all the clients of the firm. The record reveals that Osburn did not object to the state's argument, although Winters did, and this argument ceased. No relief was sought by Osburn and thus, under Maryland Rule 885, the issue has not been preserved for review.

301 Md. at 253, 482 A.2d 905 (footnote omitted).

The situation in *Osburn* is, of course, arguably distinguishable factually from that in the case *sub judice*. In *Osburn*, each defendant had an opportunity to object to the prosecutor's argument if he deemed it to be improper. Osburn's co-defendant did object and the court sustained his objection. Osburn did not object; therefore he sought no relief and was denied none. In this case, it was the prosecutor who objected to a question asked by counsel for one defendant; by sustaining that objection, the court ruled that the question was improper, no matter who asked it. But whether the *Osburn* decision is or should be applicable to the trial court's ruling on the State's objection in this case is not important here. The fact is that the *Osburn* Court did say that counsel for each defendant must voice an objection to preserve the trial court's ruling for appellate review. Applicant's appellate counsel was not unreasonable

in believing that the holding of the Court of Appeals in *Osburn* applied to applicant's appeal; entertaining such belief, she was certainly not required to anticipate that the Court would reverse itself. *See, Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

There is yet another reason why it was not unreasonable for applicant's appellate counsel not to raise the Frazier impeachment issue: at the time applicant's appeal was filed there was no Maryland precedent to suggest that such an issue might succeed. Whether, after a witness had admitted that he had consumed alcohol and/or drugs, the witness might be further questioned as to the quantity of alcohol and drugs he had consumed was an issue which, at the time of applicant's appeal, had never been addressed in any reported decision in Maryland. It is very difficult to determine when and in what circumstances an appellate counsel should pursue a novel issue, since it is well known that very few novel issues brought before appellate courts are successful. Generally, appellate counsel should not be faulted for concentrating on issues that have had some measure of past success and for eschewing issues that have no track record.

In the instant case, applicant's appellate counsel was confronted with a record that would have presented a novel issue which, according to her interpretation of a recent Court of Appeals opinion, had not been preserved for appellate review. Whether legally right or wrong, that interpretation was certainly not unreasonable. Since counsel's decision to forego the restricted impeachment issue was supported by a reasonable professional judgment, her representation of applicant cannot be deemed ineffective. Because the applicant has not proved a deficient performance of his counsel, we need not reach the second prong of *Strickland,* namely, prejudice to the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

APPLICATION FOR LEAVE TO APPEAL DENIED.