## BAR ASSOCIATION OF BALTIMORE CITY
### *v.* COCKRELL

[Misc. Docket (Subtitle BV) No. 10,
September Term, 1972.]

*Decided January 8, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*David H. Fishman*, with whom was *Joseph I. Pines* on the petition, for the Bar Association of Baltimore City.

*Arthur G. Murphy, Sr.*, with whom were *Tucker R. Dearing* and *Charles J. Josey* on the petition, for Paul J. Cockrell.

DIGGES, J., delivered the opinion of the Court.

This is a disciplinary proceeding which was instituted in this Court under Maryland Rule BV3 by the Bar Association of Baltimore City, petitioner, against Paul J. Cockrell, a member of the Bar of Maryland, respondent.

The petition alleges that Cockrell engaged in "professional misconduct or conduct prejudicial to the administration of justice." This misconduct purportedly resulted from the respondent's representation of Alfred Mason in his claim against Frank J. Gach for personal injury and property damage which was the aftermath of a motor vehicle accident that occurred on January 24, 1970. The petition additionally states that:

[The respondent in] a conversation with Mason on or about January 28, 1971, ... advised [his client] that the property damage portion of Mason's claim had been inflated [from $135.00] to approximately $435.00 in Cockrell's dealings with Gach's insurer; and that the [insurance company's] adjuster, Alarid, would be willing to settle Mason's claims for $2,000.00 if he were paid a "kick-back". Cockrell further advised that his fee would be $250.00, the medical bills were $250.00, and Mason would receive $800.00 out of the settlement.

Mason next met with Cockrell on or about May 18, 1971, at which time Mason was presented "a settlement sheet" showing a total fund of $2,500.00, and disbursements therefrom including an attorney's fee of $833.33 and a "reimbursement for monies advanced" of $600.00. Mason signed this settlement sheet, indicating his approval of the disbursements listed; but he denies that any monies were ever advanced to him by Cockrell.[1]

Based on these factual allegations, the petition then formally charged Cockrell with professional misconduct in that he disobeyed a number of the Disciplinary Rules contained in the Code of Professional Responsibility (Rule 1230[2]) by (i) "recommending and/or permitting his client to

---

1. The signed settlement sheet received in evidence reads in part:

| Total Amount of Settlement | | $2,500.00 |
|---|---|---|
| EXPENSES | | |
| (a) Attorneys' Fees | $833.33 | |
| (b) Doctor James A. Priest | 250.00 | |
| (c) Reimbursement of Monies advanced | 600.00 | |
| (d) Photostatic copy of Hospital Record | 5.00 | |
| (e) Photostatic copy of Police Report | 2.00 | |
| (f) Photostatic copy of DMV Reports | 2.00 | |
| Total Expenses | | ~~$1,692.33~~ |
| Balance to Client | | $807.67 |

2. Rule 1230 provides:

The Code of Professional Responsibility of the American Bar Association, as set forth in Appendix F of the Maryland Rules, is hereby adopted.

participate in misrepresentation" to the insurance company concerning the amount of property damage suffered in violation of DR 1-102(A) and DR 7-102(A)(5) and (7); (ii) "offering and/or paying a kick-back to the insurance adjuster" in violation of DR 1-102(A)(3), (4) and (6); and (iii) either "advancing monies to his client beyond the expenses of litigation" in violation of DR 5-103(B) or if the monies were not so advanced, then by presenting a settlement sheet to his client reciting such advances in violation of DR 1-102(A)(4) and (6), DR 7-101(A)(2) and (3) and DR 7-102(A)(5).

As authorized by Rule BV3 b, upon the filing of this petition, we directed that it be transmitted to the Supreme Bench of Baltimore City and designated Judges Albert L. Sklar, David Ross and Joseph C. Howard to hear the charges. These allegations were scheduled to be considered on May 22, 1973. However, when shortly before the day of the hearing Judge Howard became unable to participate, we named, on May 21, 1973, Judge Harry A. Cole as his replacement. At the beginning of the hearing, Cockrell requested a postponement averring that, because this change in the judicial panel became known to him only when he received a copy of our order in the morning mail, a continuance was required so as to provide the respondent with an opportunity "to determine whether or not Judge Cole should be challenged for cause." The refusal to grant this delay constitutes one of the reasons the respondent assigns for his excepting to the report and recommendation of the Supreme Bench. For reasons of clarity and convenience it is more appropriate that we consider this issue now rather than at a later time.

First we mention that under Rule BV4 e the same rules of law, evidence and procedure as used in civil proceedings in equity are applicable in disciplinary hearings. And, under equity procedure, unless the discretion which rests with the chancellor in granting or refusing a request for postponement of a scheduled hearing is arbitrarily and prejudicially administered, it will not be disturbed by this Court. *Herring v. Herring,* 251 Md. 516, 518-19, 248 A. 2d 117 (1968); *Fontana v. Walker,* 249 Md. 459, 463, 240 A. 2d 268,

*cert. denied,* 393 U. S. 927 (1968); *Vermilya-Brown v. Dallas,* 248 Md. 7, 13-14, 234 A. 2d 569 (1967). In this case the record discloses that when the request for continuance was made the following colloquy ensued:

| | |
|---|---|
| COLE, J.: | On the other hand, the fact that you want time to find out if you have a reason to object, do you have any reason to suggest to me why I should disqualify myself? |
| MR. COCKRELL: | *None whatsoever.* |
| SKLAR, J.: | Then, the motion to continue the matter is denied on the grounds which have been stated. (emphasis added). |

Since Cockrell himself stated that he had no reason "whatsoever" to suggest that Judge Cole be disqualified, we see no abuse of discretion by the hearing court when it denied the continuance requested merely to afford the respondent an opportunity to seek some possible basis for proposing the assignment of a different judge to the panel. With this disposition, we now consider the remaining reasons assigned by the respondent for his exceptions to the recommendation of the Supreme Bench.

Following a four day session, the hearing court transmitted to this Court its conclusion that Cockrell was guilty of professional misconduct by violating Disciplinary Rules DR 5-103(B) and DR 9-102(A) and recommended that he be suspended from the practice of law for a period of one year. The court assigned the following reasons for its recommendation:

Pursuant to Maryland Rule BV5 a, the following findings of fact are made:

By his own testimony, Respondent concedes that he made advancements to his client, Mason, in the amounts of $300, $150, and $150 on January 18,

1971, January 22, 1971, and January 26, 1971. This, obviously, is in violation of DR 5-103(B).[3]

It is clear that the Respondent negotiated the check [received from the insurance company] no later than February 3, 1971, and, therefore, had cash in his possession no later than that date. The Respondent's testimony that he maintained these funds in his client's file in his office from that time until he finally settled by check with his client on May 18, 1971, is difficult to believe (which check when finally presented, bounced). The inescapable inference from all of the testimony is that during the period February 3, 1971, to late June, 1971, the Respondent misappropriated his client's funds. Therefore, it must be concluded he is in violation of DR 9-102(A).[4]

When the recommendation and reasons therefor were received in this Court, Cockrell, as permitted by Rule BV5 b, filed exceptions noting, in addition to the objection already discussed, the following:

    1. The panel based its findings, decisions

---

**3.** DR 5-103(B) provides:

    While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses.

**4.** DR 9-102(A) states:

    All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

    (1) Funds reasonably sufficient to pay bank charges may be deposited therein.

    (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

and recommendation on "ultra vires charges"; or, in other words, recommended punishment for professional misconduct which had not been charged in the Bar Association's petition.

2. The panel improperly suppressed the complainant's criminal records.

3. The panel failed to properly set forth the facts.

In considering the respondent's failure of notice contention (number 1 above), we turn our attention to Rule BV3 c which provides: "[t]he charges shall be in writing and shall be *sufficiently clear and specific* reasonably to inform the attorney proceeded against of any *misconduct* charged . . . ." (emphasis added).[5] While this rule does not require that the charges be set forth in any certain form or in extensive detail, it does establish a requirement that the charges be "sufficiently clear and specific" so as to make the attorney aware of what he is compelled to answer for and defend against. *See Braverman v. Bar Assn. of Balto.*, 209 Md. 328, 335-37, 121 A. 2d 473 *cert. denied*, 352 U. S. 830 (1956). In fact any rule which did not require this degree of specificity would violate the minimum requirements of constitutional due process mandated by Article 23 of the Maryland Declaration of Rights.[6]

The hearing court, in recommending that disciplinary sanctions be imposed, found that Cockrell had "misappropriated his client's funds." If this is true, he has violated at least DR 1-102(A)(3) and (4) and DR 9-102(A) and (B)(4) of the Code of Professional Responsibility. *Bar Ass'n v. Marshall*, 269 Md. 510, 516-18, 307 A. 2d 677 (1973). However, any order now disciplining the respondent based on such a finding would be clearly violative of Rule BV3 c as respondent has not been charged in the Bar Association's

---

**5.** In addition to the rule, a similar requirement, using almost identical terms, is mandated by the provisions of Maryland Code (1957, 1968 Repl. Vol.), Art. 10, § 14.

**6.** This Court has equated the phrases "Law of the land" as used in this Article and "due process of law" as used in the Fourteenth Amendment to the Federal Constitution. Horace Mann League v. Board, 242 Md. 645, 684-85, 220 A. 2d 51 (1966); Anne Arundel County v. English, 182 Md. 514, 35 A. 2d 135 (1943).

petition with that particular misconduct. We say this because it cannot be validly contended that the failure to allege this charge in any form is a charge in writing "sufficiently clear and specific reasonably to inform the attorney proceeded against" of the misconduct alleged. Our conclusion in this regard is not attenuated by the fact that the evidence upon which the hearing court's factual findings are based resulted largely from testimony given before the judicial panel by the respondent.

Apparently recognizing that its petition as filed may not have contained the requisite allegations to support disciplinary sanctions based on a finding that the "respondent misappropriated his client's funds," the Bar Association, at the oral argument before this Court, asked that it be granted leave to amend its pleading so as to make this additional charge. The interest of justice requires that we permit this requested amendment. However, we do so without prejudice to the respondent's prerogative to raise, first in the hearing court and then in this Court, an objection based on the decision of the United States Supreme Court in *In re Ruffalo,* 390 U. S. 544, 88 S. Ct. 1222, 20 L.Ed.2d 117 (1968), unless he elects to waive this right.

As the panel of judges of the Supreme Bench of Baltimore City to which the petition was originally transmitted has already made a factual determination and recommendation based on those facts which concern the possible additional allegations of professional misconduct, we believe it is more appropriate that any additional charge or charges which may be contained in an amendment to the petition should be considered by a different panel. Accordingly, we grant the Bar Association twenty days from the date of this opinion and order within which to file its amendment to the petition; and, if it is so filed, we will then designate the judicial panel to hear any additional charges made. Consideration as to a proper disposition of the charges made in the original petition will be deferred until such time as the entire proceeding can be concluded by this Court. Rule BV5 b 4.

*It is so ordered.*